**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| STEVEN M. H., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-CV-335-TCK-JFJ |
| ) | |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Steven M. H. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.    General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II. Procedural History and the ALJ's Decision

Plaintiff, then a 51-year-old male, applied for Title II disability insurance benefits on April 14, 2015, and Title XVI supplemental security income benefits on April 15, 2015, alleging a disability onset date of July 1, 2010. R. 13, 187-199. Plaintiff claimed that he was unable to work due to conditions including diabetes mellitus with neuropathy, bilateral hand tremors, unsteady gait, pain and swelling in the knees and ankles, neck pain, and headaches. R. 240. Plaintiff's claims for benefits were denied initially on September 4, 2015, and on reconsideration on October 5, 2015. R. 47-106. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on May 1, 2017. R. 31-46. The ALJ issued a decision on July 11, 2017, denying benefits and finding Plaintiff not disabled because he was able to perform other work that exists in significant numbers in the national economy. R. 13-26. The Appeals Council denied review, and Plaintiff appealed. R. 1-3; ECF No. 2.

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2015, and he had not engaged in substantial gainful activity since his alleged onset date of July 1, 2010. R. 16. At step two, the ALJ found that Plaintiff had the severe impairments of diabetes mellitus with neuropathy, obesity, and depression. *Id.* The ALJ also found Plaintiff had non-severe impairments of hypertension, osteoarthritis, occasional tremor, and gait ataxia. *Id.* At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that was of such severity to result in listing-level impairments. R. 17-19.

3

The ALJ summarized Plaintiff's testimony. R. 20. *See* R. 35-42. Plaintiff testified that his main problem is pain/pressure in his ankles, and he is able to stand for 15 to 30 minutes, or walk for 4 to 6 blocks, before he must sit down. Plaintiff has problems bending and stooping, because it puts pressure on his ankles. He elevates his legs for 4 to 5 hours per day to alleviate the ankle swelling. Plaintiff is able to shop and make short trips, but his mother does the cooking and cleaning for the home. He has some difficulty showering. He takes naproxen for inflammation, and he plans to get diabetic shoes. Steroid shots temporarily helped his ankle pain. Plaintiff also has tremors in his hands, which make it difficult for him to do detailed work.

The ALJ summarized the objective medical evidence in the record. Most notably, Plaintiff's first record of medical treatment was on July 9, 2012, when Plaintiff saw Michael P. Souter, D.O., for primary care. R. 445-448. Examination showed bilateral 1+ pitting edema, and Dr. Souter prescribed Furosemide for peripheral edema and Citalopram for depression. R. 446. Over the course of treatment with Dr. Souter, the record showed edema intermittently, elevated blood pressure, and obesity. R. 355-442. Dr. Souter prescribed compression hose for peripheral edema in August 2012. R. 439.

In April 2013, Dr. Souter first diagnosed Plaintiff with diabetes mellitus, and he prescribed Metformin. R. 428. Dr. Souter observed edema in July 2013, although monofilament examination was normal. R. 422. By December 2013, Plaintiff was "doing well," with good blood sugars and stable depression symptoms, although he had decreased energy and trouble sleeping. R. 411. In January 2014, Dr. Souter observed reduced ankle range of motion but normal monofilament sensation. R. 410. Dr. Souter observed no edema in September 2014. R. 391. Plaintiff reported that tingling in his feet improved with Gabapentin, but Plaintiff complained in 2015 of side effects

4

from his neuropathy medication. R. 375, 379. Monofilament sensory examination has remained normal to May 2015, despite decreased ankle range of motion. *See* R. 373.

In January 2016, Plaintiff's primary care physician referred Plaintiff to a neurologist for a tremor. R. 493. In January 2017, Plaintiff reported to his primary care physician that he was doing well and sleeping well, had no complaints and good energy level, and was medication-compliant with no side effects. R. 555. In January, February, and April 2017, Plaintiff visited Nicole L. Cupp, D.P.M., for foot pain. R. 481-486. Examination on all three visits revealed good range of motion across the forefoot, midfoot, and hindfoot with no pain or restriction. *Id.* Manual muscle testing was 5/5 bilateral and no edema, with 2/4 reflexes. *Id.* Dr. Cupp observed mild pain on palpation to the posterior tibial tendon bilateral, but Plaintiff's alleged numbness, burning, and tingling could not be clinically reproduced. *Id.*

Regarding opinion evidence, the ALJ noted the opinions of consultative examiner Johnson Gourd, M.D. R. 21-22, 342-347. Dr. Gourd examined Plaintiff in July 2015 and assessed Plaintiff with diabetes mellitus type 2 with peripheral neuropathy, essential tremors by history, and arthritis by history with no appreciable joint swelling. On examination, Plaintiff had bilateral 1+ lower extremity edema but 5/5 strength and good movement in all extremities. Plaintiff moved about the examination room and completed heel-toe walking easily. Plaintiff's gait was stable and steady, although slow, and he was able to rise from a seated position without difficulty. Dr. Gourd noted no neurological deficits except for slight sharp/dull discrimination in the lower extremities. Plaintiff was able to pick up and manipulate small objects without difficulty, and Dr. Gourd noted normal fine tactile manipulation of objects. Dr. Gourd observed no appreciable tremors during the exam. The ALJ found Dr. Gourd's examination findings were inconsistent with Plaintiff's statements regarding his standing/walking ability. R. 21-22.

5

The ALJ gave partial weight to the state agency medical opinions of Suzanne Roberts, M.D., and Matheen Khan, M.D. R. 23. The agency medical consultants opined that Plaintiff was able to perform the full range of light work, except with occasional lifting and/or carrying 25 pounds. R. 53-54, 66-67, 85, 100. The ALJ found that occasionally lifting and/or carrying 20 pounds was more consistent with the demands of light work. R. 23. The ALJ gave less weight to the opinions of the state psychological opinions of Cynthia Kampschaefer, Psy.D., and Mary Rolison, Ph.D. R. 23. The agency psychological consultants opined that Plaintiff could perform simple and some complex tasks, relate to others on a superficial work basis, and adapt to a work situation. R. 56, 69, 88, 103. The ALJ gave diminished weight to these opinions, because Plaintiff has longstanding and primarily untreated depression, and because the agency reviewers conformed to the requirements for disability determination based on regulations that are no longer in effect. R. 23.

After evaluating the medical and psychological evidence, Plaintiff's statements, Plaintiff's mother's third-party statement, and the opinion evidence, the ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform a limited range of light work as follows:

> [Plaintiff] is able to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand and/or walk at least six hours in an eight-hour day, and sit at least six hours in an eight-hour workday. [Plaintiff] is limited to simple, repetitive tasks, is able to relate to supervisors and coworkers only superficially, and not work with the public.

R. 19. The ALJ found that Plaintiff was unable to perform past relevant work as a plumber. R. 24. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other work, such as Routing Clerk and Marker. R. 25. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). R. 26. Based on the VE's testimony, the ALJ concluded these

positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded Plaintiff was not disabled.

**III. Issues**

Plaintiff raises two points of error in his challenge to the denial of benefits: (1) the ALJ erred at steps two and three and in the RFC, because he did not consider all of Plaintiff's impairments; and (2) the ALJ erred at step five, because his mental RFC is incompatible with the jobs identified by the VE. ECF No. 12. For ease of reading, the undersigned reorganizes some of Plaintiff's arguments in the below analysis.

**IV. Analysis**

**A. The ALJ Reasonably Considered and Evaluated the Evidence Regarding Plaintiff's Physical Impairments**

Plaintiff argues that, at steps two and three, ALJ failed to adequately consider the combination of Plaintiff's hand tremors, his gait ataxia, and his decreased range of motion and edema in the ankles. In support, Plaintiff cites clinical observations of tremor and gait ataxia. *See* R. 566-569 (Plaintiff reported in February 2016 he had moderate bilateral hand tremor, aggravated by stress or tension), 480 (brain MRI in January 2017 revealed Dandy-Walker variant in posterior fossa), 582 (Plaintiff reported in January 2017 he had unsteady gait). However, the ALJ noted these clinical findings in the decision, and he clearly considered the combination of Plaintiff's hand tremors, gait ataxia, as well as his diabetic neuropathy and osteoarthritis of the feet. *See* R. 16-17. The ALJ also noted that Plaintiff's hand tremor was medically documented but had been fairly controlled, and it was not always present. R. 16-17. *See* R. 576 (Plaintiff reported in December 2016 that medication relieved his tremor and symptoms were fairly controlled), R. 342 (Dr. Gourd observed no appreciable tremors during consultative exam in July 2015, and Plaintiff was able to pick up and manipulate small objects without difficulty). The ALJ also noted that

7

Plaintiff's walking had improved following injections as of April 2017. R. 17, 483. The ALJ concluded that Plaintiff's impairments of hypertension, osteoarthritis, occasional tremor, and gait ataxia did not significantly limit Plaintiff's physical or mental ability to do basic work activities. R. 17. These objective findings provide substantial evidence supporting the ALJ's determination at steps two and three.

Plaintiff further contends that, because of his physical limitations, including gait ataxia and hand tremors, he should have been limited to sedentary work and should have been assigned limitations with use of his hands. However, the ALJ adequately explained his reasons for limiting Plaintiff to light work, with no specific hand-use limitations. Specifically, the ALJ noted Dr. Gourd's objective findings of no difficulty with moving his extremities, steady gait, and no difficulty with heel-toe walking. R. 21, 342-343. The ALJ also noted the medical documentation for Plaintiff's tremor, while also noting that the tremor was not constant and did improve with medication. R. 16, 566, 569, 571. The ALJ also noted Dr. Cupp's inability to clinically reproduce Plaintiff's complaints of numbness, tingling, and burning in the feet. R. 22, 483-486. The ALJ was entitled to rely upon these objective findings in determining the RFC. Plaintiff's allegation that he would be unable to engage in frequent handling or fingering because of his tremors is unsupported in the record. The undersigned identifies no error in the ALJ's conclusion at steps two or three, or in assessing the RFC.[1] Plaintiff simply invites the court to re-weigh the evidence,

---

[1] Under the heading of the second allegation of error, Plaintiff repeats the argument that the RFC was in error, because the ALJ did not appropriately account for Plaintiff's hand tremors. *See* ECF No. 12 at 5-6. To the extent Plaintiff's arguments overlap, the undersigned addresses them in this section. Because the undersigned finds no error at the earlier steps of the sequential analysis, the undersigned correspondingly finds no error in formulating the hypothetical question posed to the VE and no error in concluding Plaintiff was capable of performing jobs that required frequent reaching, handling, or fingering. In light of this conclusion, the undersigned does not address Plaintiff's argument regarding the number of jobs remaining in the national economy, should the Marker position be eliminated due to its requirement of frequent fingering.

which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo") (quotation and alterations omitted).

### B. Plaintiff's RFC Is Compatible with Jobs Requiring Level-Two Reasoning

The ALJ found that Plaintiff had the RFC to perform "simple, repetitive tasks." R. 19. Plaintiff argues these mental limitations are incompatible with both jobs identified by the VE, because the DOT assigns them a reasoning level of two. *See* DOT 209.587-034 (Marker), 222.587-038 (Routing Clerk).

The reasoning level component is a classification under the General Educational Development ("GED") scale. DOT App'x C, § III. The GED scale is composed of three divisions: Reasoning Development, Mathematical Development, and Language Development. *Id.* The "Reasoning Development" division of the GED scale is divided into six levels. A job with a reasoning level of two requires the worker to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.*

Plaintiff argues that the Social Security Administration's Program Operations Manual System ("POMS") supports the premise that a limitation to simple, repetitive tasks would eliminate jobs requiring a GED reasoning level of two. *See* POMS § DI 25020.010(A)(3) (unskilled work requires the abilities to "understand, carry out, and remember simple instructions" and to "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions"). Plaintiff's argument is not persuasive. The Tenth Circuit has stated that an RFC limitation to simple and routine work tasks appears consistent with level-two reasoning. *Hackett*

9

*v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). *See also Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (rejecting argument that limitation to simple, repetitive, and routine work should be construed as a limitation to level-one reasoning jobs, citing *Hackett*); *Rainwater v. Colvin*, No. 15-CV-491-GKF-FHM, 2016 WL 11468941, at *2 (N.D. Okla. Sept. 21, 2016) (noting that, although the DOT "employ[s] the word 'detailed,' reasoning level 2 jobs are not inconsistent with" a limitation of being able to understand, remember, and carry out simple instructions), *report and recommendation adopted*, 2016 WL 6561298 (N.D. Okla. Nov. 4, 2016). Plaintiff does not explain how the demands of unskilled work, as defined in the POMS, are inconsistent with a GED reasoning level of two, particularly in light of the Tenth Circuit's findings in *Hackett* and *Stokes*. Accordingly, no conflict exists between Plaintiff's RFC limitation to performing only "simple, repetitive tasks" and the level-two reasoning required by the Marker and Routing Clerk jobs.

## RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by December 16, 2019.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1).  The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions."  *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).  Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

    **SUBMITTED** this 2nd day of December, 2019.

                                              **JODI F. JAYNE, MAGISTRATE JUDGE**
                                              **UNITED STATES DISTRICT COURT**